## WICHITA VALLEY RY. CO. v. BALDWIN. (No. 10740.)

(Court of Civil Appeals of Texas. Fort Worth. June 7, 1924.)

1. **Witnesses ☞258 — Exclusion of testimony on ground as being from records not shown to have been correctly made held error.**

Where testimony did not appear to have been based merely upon records kept by witnesses, objection to the testimony that it was from records which the witnesses had not proved to have been correctly made was improperly sustained.

2. **Trial ☞192 — Assuming in charge loss of calf and cow not error where losses proven by uncontradicted testimony.**

In action by shipper for damages to shipment of cattle, trial court's assuming in his charge plaintiff's loss of calf and cow was not error, such losses being proven by uncontradicted testimony.

3. **Trial ☞350(6) — Specific issues of negligence alleged if supported by evidence should be submitted.**

The issues to be submitted of negligence of either carrier or shipper should be the specific issues of negligence alleged, if supported by evidence, instead of submitted negligence in general terms.

**4. Trial ⬳350(6) — Evidence held to justify submission of shipper's negligence.**

In action for damages to shipment of cattle, evidence *held* to justify submission of shipper's negligence in placing his cattle in pens on Friday afternoon when he knew there were no facilities for watering them, and that the train would not leave until 4 p. m. the following day.

**5. Trial ⬳192—Evidence held to justify assuming cars of cattle in another's name belonged to shipper.**

In action for damages to shipment of seven cars of cattle, where evidence showed that, although three cars were shipped in another's name, they belonged to plaintiff, there was no error in assuming ownership in plaintiff of the seven cars.

**6. Carriers ⬳215(1) — Loading of shipper's cattle at rear end of train held not negligence.**

Where cattle shipped were injured in head-on collision, loading at rear end of the train *held* not to constitute a basis of recovery on the ground of negligence in so loading them, though because they were at the rear end of the train they were injured, while the cattle of another at front end of train were not injured.

**7. Carriers ⬳ 228(3)—Admission of evidence that jolt to plaintiff's cattle at rear end of train was more severe than jolt to cattle in front cars held proper.**

Where cattle of another shipper, loaded near the front end of train, were not injured by head-on collision, proof that jolt to plaintiff's cattle loaded at the rear end of the train was more severe than the jolt to the cattle loaded near the front was proper, to account for the difference in effect of the collision on plaintiff's cattle and the other cattle.

Appeal from Haskell County Court; R. E. Lee, Judge.

Action by J. L. Baldwin against the Wichita Valley Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Ratliff & Ratliff, of Haskell, for appellant.
Smith & Grissom, of Haskell, for appellee.

DUNKLIN, J. This appeal by the Wichita Valley Railway Company is from a judgment rendered against it in favor of J. L. Baldwin for $500 damages sustained to a shipment of cattle made by the plaintiff, Baldwin, from Haskell, Tex., to St. Louis, Mo. There were seven cars of cattle in the shipment.

According to allegations in plaintiff's petition, there was a delay of 26 hours in defendant's stock pens before starting the shipment after defendant had accepted them. During that delay the cattle were without water, due to defendant's failure to furnish facilities for watering them in the shipping pens. While being loaded on the cars one calf was permitted to escape and was never recovered by the plaintiff. The delay in starting the shipment from Haskell, and the failure to furnish facilities for watering them, was alleged to be negligence. According to further allegations in the petition, after the cattle started from Haskell, and while en route to St. Louis, the defendant negligently kept them confined in the cars without feed and water for an unreasonable length of time, and handled them negligently, permitting the cars in which they were loaded to be jammed and knocked into by other cars, as the result of which the cattle were bruised, skinned, and thrown down, and thereby their market value was greatly depreciated. According to further allegations, due to lack of feed and water, one cow died. Damages were claimed as a result of the negligence so alleged.

Among other defenses, the defendant alleged that, while it was the initial carrier, it did not in fact transport the cattle any further than to Wichita Falls, Tex., the remainder of the trip being over connecting lines; that it transported the cattle from Haskell, Tex., to Wichita Falls within a reasonable time and without damage. It was further alleged that the plaintiff voluntarily, and without the consent or knowledge of the defendant, placed his cattle in defendant's stock pens at Haskell at about 6:50 o'clock p. m. on January 3, 1922, on Friday, after he was notified by the defendant's agent that the train upon which plaintiff desired his cattle to be transported would not start from Haskell until Saturday evening, January 14, more than 24 hours after the cattle were placed in the pens. It was further alleged that plaintiff knew that the pens at Haskell were not provided with facilities for watering the cattle, and therefore he was guilty of contributory negligence in placing them in the pens on January 13th, which would be a bar to a recovery of any damages sustained by the cattle while in those pens, due to the delay thereby caused or due to the lack of water.

Defendant further alleged that plaintiff assumed the task of loading the cattle at Haskell with the aid of the train crew furnished by defendant, who were placed under his control in that work, and that therefore, if the calf escaped, as alleged, during such loading operations, the loss thereof was not chargeable to the defendant. It was further alleged that the shipment was made under and by virtue of a written contract entered into with the plaintiff, by one provision of which the plaintiff agreed, at his own risk and expense, to take care of, feed, water, and attend to the stock while the same were in the pens awaiting shipment, while the same were being loaded, and while the same were being transported to St. Louis; also to unload and reload them at feeding and transferring points. The contract further stipulated that plaintiff should hold the carrier harmless on account of any loss or dam-

age to the cattle while being so cared for and attended to by him or his agents, except such damages as might result from the negligence of the carrier. The contract further stipulated that the undertaking on the part of the plaintiff to so handle and care for the stock was in consideration of the agreement of the defendant to furnish him free transportation for himself and his agent, Lewis, which was done.

The defendant pleaded a further stipulation in the contract by the terms of which the plaintiff agreed that the cattle might be confined in the cars for 36 hours without unloading for feed, water, or rest. The defendant further alleged that, if the cattle were injured and depreciated in market value, as alleged in plaintiff's petition, such damage was occasioned by plaintiff's own negligence, and not as the result of any fault or negligence on the part of defendant.

The evidence showed that the cattle were placed in defendant's stock pens at Haskell late in the afternoon on Friday, and were not shipped out until late in the afternoon of Saturday following. During that time they were without water on account of the fact that there were no facilities in the pens for watering. It was further shown that the cattle accompanied another shipment of cattle by Swenson Bros., which started at Stamford and reached Haskell about 7 o'clock Saturday afternoon, both shipments going by the same train. The evidence further showed that while plaintiff's cattle were being loaded at Haskell one calf escaped and was lost, and when the shipment reached Muskogee, Okl., one cow was lost, as the result, according to the testimony of plaintiff's witnesses, of drinking too much water. The uncontradicted testimony further showed that the cattle were fed by plaintiff while in the pens at Haskell with hay which he bought, but they had no water from the time they were placed in the pens at Haskell until they reached Muskogee, early Monday morning. At Muskogee they were unloaded, fed, and watered, and after a rest of several hours they were reloaded and reached St. Louis about 7 o'clock Wednesday morning.

Plaintiff introduced testimony tending to show that between Muskogee and St. Louis there was a head-on collision of the train, as a result of which the cattle were knocked down, bruised, and skinned. W. T. Hudson, one of plaintiff's witnesses, testified that he was an experienced cattle shipper, and that in his opinion a shipment of cattle leaving Haskell on Saturday night, with a reasonable run, should reach St. Louis on Tuesday morning following, 24 hours earlier than plaintiff's cattle reached their destination.

[1] The defendant offered testimony of several trainmen who handled the cattle between Haskell and St. Louis, all of whom testified, in effect, that the cattle were handled with reasonable dispatch and without any unusual jolts or jars of the cars, and that no complaint of any rough handling was made by the shippers in charge. The testimony so offered was in depositions of those witnesses. It was objected to on the ground that the same was from records which the witnesses had not proved to have been correctly made. That objection, which was offered to the testimony of each witness, was sustained. That ruling was erroneous, since the bills of exception do not show that the testimony was based merely upon the records kept by the witnesses. The facts detailed by them were testified to as being true without reference to any records kept by the witnesses. The testimony so excluded was in rebuttal of the testimony offered by plaintiff to show rough handling and negligent delay. And the error in excluding that testimony will require a reversal of the judgment, independently of the merits of the other errors assigned.

In view of another trial we deem it proper to briefly discuss in a general way some other assignments for the guidance of the trial judge.

[2] The court gave a general charge instead of submitting the case on special issues. If the case is again submitted on a general charge then the jury should be clearly instructed that a recovery for the defendant's negligence cannot be awarded if plaintiff himself was guilty of negligence proximately contributing to the injury to the cattle, for which the recovery is allowed. We think there was no error in the action of the court in assuming in his charge plaintiff's loss of a calf at Haskell and a cow at Muskogee, since those losses were proven by uncontradicted testimony.

[3, 4] In submitting the issues of negligence either of the defendant or of the plaintiff, the issues to be so submitted should be the specific issues of negligence alleged in the pleadings if the same are supported by the evidence, instead of submitting negligence in general terms. We believe that the defendant was entitled to a submission of the issue as to whether or not plaintiff was guilty of contributory negligence in placing his cattle in the pens at Haskell on Friday afternoon, where there were no facilities for watering them, instead of waiting to do so until the following day, in view of the testimony of defendant's agent that the cattle were so placed without his knowledge or consent, and that he notified the plaintiff that the cattle could not be started on the trip until 4 o'clock of the evening of the following day.

[5] The evidence was without dispute that three cars of cattle were shipped in the name of A. J. Lewis, but it further shows beyond controversy that those cattle belonged to the plaintiff, and there was no error in assuming the ownership in plaintiff of the seven cars of cattle.

In the shipping contract plaintiff gave express authority to the defendant to confine the cattle in the cars for 36 hours without feed, water, or rest. The defendant should be given the benefit of that provision in the contract by appropriate instructions, if the evidence warrants such an instruction, and also to a further provision in the contract, by the terms of which plaintiff himself assumed the duty of properly feeding, watering, and caring for the cattle during the trip, if the testimony upon another trial tends to show that plaintiff and his employee, Lewis, failed to perform those duties, and that as a result thereof the cattle suffered injury.

[6, 7] The loading of plaintiff's cattle at the rear end of the train could not be made the basis of a recovery on the ground of negligence in so loading them. Had they been placed at the front, then Swenson's cattle would have been at the rear, and no reason is shown why plaintiff's cattle should have been given the preference in that respect. However, since it appeared that Swenson's cattle were not injured by the alleged collision, we are not prepared to say that it was error to admit proof that the jar to cattle loaded at the rear end of the train was more severe than the jolt to cattle loaded near the front, in order to account for the difference in effect of the collision on plaintiff's cattle and Swenson's cattle.

For the reasons stated, the judgment is reversed, and the cause is remanded.

BUCK, J., not sitting.